AUSA: Joe Zabel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ALI MOHAMMAD ADI,

Defendant.

**25 MAG 2674**

<u>**SEALED COMPLAINT**</u>

Violations of 18 U.S.C. §§ 371, 641, and 2; 7 U.S.C. § 2024(b)

COUNTY OF OFFENSE: BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

  RUBEN NUNEZ, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Agriculture (the "USDA"), and charges as follows:

### COUNT ONE
### (Conspiracy to Steal Government Funds and Misappropriate USDA Benefits)

  1. From at least in or about February 2023 up to and including in or about November 2024, in the Southern District of New York and elsewhere, ALI MOHAMMAD ADI, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, theft of government funds, in violation of Title 18, United States Code, Section 641, and misappropriation of USDA benefits, in violation of Title 7, United States Code, Section 2024(b).

  2. It was a part and an object of the conspiracy that ALI MOHAMMAD ADI, the defendant, and others known and unknown, knowingly would and did embezzle, steal, purloin, and convert to his use and the use of another, and without authority, sell, convey, and dispose of a record, voucher, money, and thing of value of the United States and a department and agency thereof, to wit, the USDA, which exceeded the sum of $1,000, and receive, conceal, and retain the same with intent to convert it to his use and gain, knowing it to have been embezzled, stolen, purloined, and converted, in violation of Title 18, United States Code, Section 641.

  3. It was further a part and an object of the conspiracy that ALI MOHAMMAD ADI, the defendant, and others known and unknown, knowingly would and did use, transfer, acquire, alter, and possess benefits in a manner contrary to Chapter 51 of Title 7 of the United States Code, and the regulations issued pursuant thereto, which exceeded the sum of $5,000, in violation of Title 7, United States Code, Section 2024(b).

Overt Acts

  4. In furtherance of the conspiracy, and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

      a. On or about April 19, 2023, one of ADI's stores located on East 149th Street in the Bronx, New York ("Store-1") processed an unauthorized $15.00 Supplemental Nutrition Assistance Program Electronic Benefits Transfers transaction for cigarettes during an undercover operation conducted by the USDA.

      b. On or about September 2, 2023, ADI began operating a Supplemental Nutrition Assistance Program Electronic Benefits Transfers terminal at Store-1 using a license number authorized only for a different store.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Theft of Government Funds)

5.    From at least in or about February 2023 up to and including in or about November 2024, in the Southern District of New York and elsewhere, ALI MOHAMMAD ADI, the defendant, knowingly embezzled, stole, purloined, and converted to his use and the use of another, and without authority, sold, conveyed, and disposed of a record, voucher, money, and thing of value of the United States and a department and agency thereof, to wit, the USDA, which exceeded the sum of $1,000, and received, concealed, and retained the same with intent to convert it to his use and gain, knowing it to have been embezzled, stolen, purloined, and converted, to wit, ADI operated and controlled retail stores that illegally processed Supplemental Nutrition Assistance Program Electronic Benefits Transfer funds without proper authorization.

(Title 18, United States Code, Sections 641 and 2.)

## COUNT THREE
### (Misappropriation of USDA Benefits)

6.    From at least in or about February 2023 up to and including in or about November 2024, in the Southern District of New York and elsewhere, ALI MOHAMMAD ADI, the defendant, knowingly used, transferred, acquired, altered, and possessed benefits in a manner contrary to Chapter 51 of Title 7 of the United States Code, and the regulations issued pursuant thereto, which exceeded the sum of $5,000, to wit, ADI fraudulently obtained and processed funds from Supplemental Nutrition Assistance Program Electronic Benefits Transfer funded by the USDA through retail stores that were not authorized to use or obtain Supplemental Nutrition Assistance Program Electronic Benefits Transfers.

(Title 7, United States Code, Section 2024(b); Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7.    I am a Special Agent with the USDA, and I have been personally involved in this investigation. This Complaint is based on my investigation, my conversations with other law enforcement agents and other individuals, and my examination of reports and records. Because

this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The Supplemental Nutrition Assistance Program

8.  The Food Stamp Act of 1977, as amended, 7 U.S.C. § 2011 *et seq.*, established the Food Stamp Program, which is now known as SNAP. SNAP is overseen by the USDA's Food and Nutrition Service ("FNS"). SNAP benefits are obligations of the Federal Government and are redeemable at face value through the United States Treasury.

9.  SNAP uses federal tax dollars to subsidize low-income households' access to food. Under the program, eligible households receive SNAP benefits in the form of credits to Electronic Benefit Transfer ("EBT") cards, which are plastic debit cards that can be used to buy food from retail food stores participating in SNAP. Recipients of SNAP assistance can redeem their program benefits by using an EBT card to purchase eligible food items at authorized retailers.

10. The transfer of benefits is initiated when the recipient's card is swiped through an EBT terminal at an authorized retailer. The recipient is then prompted to enter a personal identification number ("PIN") to access their SNAP account. The SNAP system then verifies the PIN and either authorizes or denies the transaction, depending on the balance in the recipient's account. If the transaction is approved, the recipient's account is debited for the amount of the purchase, and a bank account that the retailer has designated is credited for that amount.

11. SNAP benefits may be accepted only by retailers authorized by the Federal Government. To participate in SNAP, the owner or operator of a retail food store must first apply for authorization. If the USDA approves the retailer's application, then the retailer is permitted to accept EBT cards from eligible SNAP recipients in exchange for the purchase of eligible food items. Once FNS authorizes a retailer to accept SNAP benefits, FNS issues the retailer a SNAP permit and a unique FNS number. USDA uses the FNS number to identify the retailer and to track redemptions. Each FNS number is unique to a specific authorized retail location and may not be shared or used by any other store or retailer. A retailer that does not possess an FNS number and accompanying permit, may not accept or redeem SNAP benefits.

12. Once a retailer obtains an FNS number, a retailer may obtain an EBT terminal from various financial institutions, or from a third-party vendor. A retailer may obtain more than one EBT terminal for a particular store, and each EBT terminal may be connected to a separate bank account, even though it shares the same FNS number. In a typical transaction, an authorized retailer accepts SNAP benefits from a recipient, and then remits a fee to the third-party vendor.

### Overview of the Scheme

13. I have been involved in investigating unauthorized EBT terminals that I believe were illegally obtained and operated by ALI MOHAMMAD ADI, the defendant. Based on my participation in this investigation, including my conversations with other law enforcement officers, and my review of records and reports, among other things, I have learned the following:

      a. ADI resides in the Bronx, New York.

      b. ADI operates at least three retail stores. None of these three stores is authorized to conduct EBT transactions, however. Nevertheless, ADI used FNS numbers assigned to other stores—which were authorized to conduct EBT transactions but were not owned or operated by ADI—to process unauthorized EBT transactions at his stores. The proceeds of those EBT transactions were deposited into bank accounts controlled by ADI.

      c. As set forth further below, from at least in or about February 2023 up to and including in or about November 2024, ADI operated at least three retail stores in the Bronx, New York that accepted SNAP benefits without authorization, resulting in approximately $4.4 million in unauthorized EBT transactions.

      d. The retail stores that ADI operated sold products such as cigarettes, tobacco, and other items ineligible for EBT. To process EBT transactions at these stores, ADI worked with co-conspirators to fraudulently obtain EBT terminals from processing companies. ADI and his co-conspirators submitted applications using FNS numbers that belonged to legitimate, authorized stores but were not authorized for use at ADI's stores. ADI maintained control over the bank accounts that received proceeds from these unauthorized transactions.

      e. Additionally, in or about April 2023, ADI and his store employees processed an unauthorized EBT transaction during an undercover operation conducted by the USDA. As set forth in further detail below, undercover agents purchased cigarettes—which are categorically ineligible to be purchased using EBT—at Store-1 using an EBT card, and the store processed a $15.00 transaction for the cigarettes.

      f. Finally, one of ADI's co-conspirators ("CC-1"), who has voluntarily provided information to law enforcement, stated, in substance and in part, that ADI operated multiple retail locations with employees who worked at his direction and control, worked closely with other co-conspirators, and was aware of the illegal nature of his EBT terminal operations. CC-1 further indicated, in substance and in part, that ADI frequently needed EBT machines replaced and was part of a network of individuals trafficking in unauthorized SNAP benefits. CC-1 first spoke with law enforcement on a voluntary basis in or about July 25, 2025, and has been cooperative with law enforcement since that time. CC-1 has been charged in the Southern District of New York in connection with CC-1's participation in a conspiracy to commit SNAP fraud. CC-1 has not yet pled guilty, and otherwise has no criminal history in the United States. The information CC-1 has provided has been corroborated, in part, by other evidence gathered in the course of this investigation, including bank records, USDA transaction data, and the results of the undercover operation. CC-1 is cooperating with law enforcement, in part, in the hopes of obtaining a more lenient sentence.

<u>ADI's Stores</u>

14. Based on my discussions with CC-1, my discussions with other law enforcement agents, as well as my review of bank records, USDA transaction data, undercover operation reports, and law enforcement records, I have learned the following:

        a. ADI operated Store-1 using an FNS number ending in 3857 ("the 3857 number"). Based on my review of USDA databases, that particular FNS number was assigned to and authorized for use only by a separate store, which was not owned or operated by ADI, located in Lawrence, New York. From on or about September 2, 2023 to on or about January 20, 2024, Store-1 processed approximately $312,411.29 in unauthorized EBT transactions using the 3857 number. Store-1 also used an FNS number ending in 3854 ("the 3854 FNS number"). Based on my review of USDA databases, that particular FNS number was assigned to and authorized for use only by a separate store, which also was not owned or operated by ADI, located in New Rochelle, New York. From on or about February 25, 2023 to on or about January 11, 2024, Store-1 processed approximately $782,737.18 in unauthorized EBT transactions using the 3854 number.

        b. ADI operated a second store on Willis Avenue in the Bronx New York ("Store-2") using an FNS number ending in 0539 ("the 0539 FNS number"). Based on my review of USDA databases, that particular FNS number was assigned to and authorized for use only by a separate store, which was not owned or operated by ADI, located in Raleigh, North Carolina. From on or about August 15, 2024 to on or about November 23, 2024, Store-2 processed approximately $252,281.21 in unauthorized EBT transactions using the 0539 number. Store-2 also used the same FNS number ending in 3854 that Store-1 used. From on or about February 25, 2023 to on or about January 11, 2024, Store-2 processed approximately $365,005.14 in unauthorized EBT transactions using the 3854 number.

        c. ADI operated a third store on 3rd Avenue in the Bronx, New York ("Store-3," and together with Store-1 and Store-2, the "Stores") using the same FNS number ending in 3854 that was used at Stores-1 and -2. From on or about February 25, 2023 to on or about April 10, 2024, Store-3 processed approximately $2,696,603.74 in unauthorized EBT transactions using the 3854 number.

        d. Based on my review of bank records, I believe that ADI maintained exclusive control over the bank accounts opened to receive proceeds from the fraudulent EBT transactions processed at Stores-1, -2, and -3. Specifically, ADI was the sole authorized signatory on at least three TD Bank business accounts that were used to receive fraudulent EBT proceeds: (1) a TD Account ending in 5311, opened on or about January 16, 2023, for Store-1; (2) a TD Account ending in 2637, opened on or about July 20, 2023, for Store-2; and (3) a TD Account ending in 2263, opened on or about December 8, 2022, for Store-3. Bank account opening documentation shows that ADI personally opened each of these accounts and was listed as the sole authorized signatory, giving him exclusive control over the deposit and withdrawal of funds from the fraudulent EBT transactions processed at his three retail locations.

        e. Based on information provided by CC-1 I have learned additional details about ADI's involvement in the fraudulent scheme:[1]

---

[1] As set forth above, law enforcement has found CC-1's information to be reliable and credible, and information CC-1 has provided has been corroborated, in part, by other evidence gathered in the course of this investigation, including bank records, USDA transaction data, undercover operation results, surveillance evidence, and testimony from other cooperating witnesses.

    i. ADI worked closely with other known co-conspirators, some of whom have been charged publicly, to source unauthorized FNS numbers and EBT terminals, actively participating in a network of individuals who facilitated the procurement and distribution of unauthorized FNS numbers and EBT terminals across multiple retail locations in the New York metropolitan area.

    ii. ADI frequently needed EBT terminals replaced due to detection by authorities or technical failures, and would repeatedly seek out and acquire unauthorized EBT terminals through his network of co-conspirators.

    iii. ADI was aware of the illegal nature of the EBT terminal operations and the fraudulent use of unauthorized FNS numbers, yet continued to actively participate in and direct the scheme, including instructing store employees on how to process unauthorized transactions.

### Illegal Sale in April 2023

15. Based on my participation in an undercover operation in April 2023, my discussions with other law enforcement agents, as well as my review of audio and video recordings made by law enforcement, and other law enforcement records, I have learned the following:

  a. On or about April 19, 2023, undercover agents from the USDA entered Store-1 and requested to purchase cigarettes using an EBT card. As set forth above, *see supra* ¶ 13(e), cigarettes categorically are not authorized to purchase with SNAP benefits via EBT, making any such sale fraudulent.

  b. An individual working at the store, believed to be under ADI's direction and control based on CC-1's testimony and the individual's presence at Store-1—one of ADI's stores—processed the transaction and charged $15.00 to the EBT card for cigarettes.

  c. Based on my review of USDA databases, I know that this transaction was processed using the 3854 number. As set forth above, the 3854 number was used at Store-1 and Store-3, both operated by ADI, despite the 3854 number being registered only to another store in a different location that was not owned or operated by ADI, further confirming the use of unauthorized FNS numbers.

### ADI's Theft of Over $4.4 Million in Unauthorized SNAP Benefits

16. In total, as set forth above, between approximately February 2023 and November 2024, the illegal terminals obtained and operated by ALI MOHAMMAD ADI, the defendant, at his Stores, processed over approximately $4.4 million in unauthorized SNAP benefits. ADI did this by using FNS numbers assigned to other retail stores, not owned or operated by him, at EBT terminals in the Stores. The proceeds of this fraudulent scheme were then deposited in bank accounts controlled by ADI, who was the sole authorized signatory on the bank accounts that received the fraudulent payments from the EBT processing companies.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ALI MOHAMMAD ADI, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

_____
RUBEN NUNEZ
Special Agent
United States Department of Agriculture

Sworn to me this 22d day of August, 2025

_____
THE HONORABLE BARBARA MOSES
United States Magistrate Judge
Southern District of New York